J-S21003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH J. SPONSLER | |
| Appellant | No. 208 WDA 2016 |

Appeal from the Judgment of Sentence January 12, 2016
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0000935-2015
CP-07-CR-0000941-2015

BEFORE:  LAZARUS, J., DUBOW, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                          **FILED APRIL 26, 2017**

Kenneth J. Sponsler appeals from the judgment of sentence, entered in the Court of Common Pleas of Blair County, following his conviction for multiple offenses stemming from a narcotics transaction.[1]  After review, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Sponsler was charged and convicted of possession of a controlled substance, 35 P.S. §780-113(a)(15) (heroin), delivery of a controlled substance, 35 P.S. §780-113(a)(30), and criminal conspiracy, 18 Pa.C.S. §903.

On September 8, 2014, the West IV Drug Task Force[2] ("Task Force") coordinated a controlled buy of heroin between a previously developed confidential informant ("CI") and an associate of Sponsler, Dennis Campbell. The CI informed Task Force Sergeant Christopher Moser he had arranged a purchase with Campbell to buy five packets of heroin for one hundred dollars, and that the heroin "would come from a white male named Ken [Sponsler]." N.T. Trial, 10/19/15, at 140. The CI stated Sponsler drove a blue Saturn vehicle. Before the CI initiated the buy, Sergeant Moser strip-searched him for contraband and found none. Sergeant Moser then provided the CI with one hundred dollars buy money, and another Task Force officer drove the CI to meet Campbell at his apartment.

After the CI arrived, he entered Campbell's apartment, where he observed Campbell make a phone call to a person Campbell identified as Sponsler. Shortly thereafter, Sergeant Moser observed Sponsler arrive at the apartment in a blue Saturn, license plate number HFG5160, registered to "Kenny Sponsler." Sponsler entered the apartment and proceeded to the bathroom in Campbell's bedroom. Campbell gestured, with head nods, for the CI to give him the buy money, and took receipt of the one hundred dollars from the CI. Campbell then followed Sponsler into the bathroom.

---

[2] The West IV Task Force consists of law enforcement officers of the Altoona County Police Department, the Altoona County Sheriff's Department, the Pennsylvania State Parole Office, and the Blair County Parole Office.

The CI did not follow Sponsler and Campbell into the bathroom, stating doing so would have been irregular and may have compromised the heroin transaction. Moments after Campbell entered the bathroom, he and Sponsler exited, and Campbell handed the CI five bags of heroin. Afterward, the CI left Campbell's apartment and turned the heroin over to the Task Force. During the course of the controlled buy, the CI constantly communicated with Sergeant Moser via cellular text messaging.

On April 01, 2015, Altoona Police Patrolman Fred Wasser and Agent Hauser of the State Parole Office, during the course of a countywide raid, executed an arrest warrant for Sponsler stemming from the September 8, 2014 heroin transaction. Following a lengthy chase, Patrolman Wasser and Agent Hauser apprehended Sponsler.

On October 15, 2015, Sponsler proceeded to jury trial. During direct examination of Patrolman Wasser, the Commonwealth elicited the following testimony:

PATROLMAN WASSER: My assignment was the arrest, capture of a target.

…

COMMONWEALTH: And did you go by yourself to execute this assignment or were you given a partner?

A.: I was assigned a team member force the day. That team member was Agent Hauser with the State Parole Office.

Q.: And does State Parole and other entities such as the Sheriff's Department and county parole participate in executing these sweeps or drug raids?

A.: Yes, sir.

N.T. Trial, 10/19/15, at 101-02. Wasser's mention of "the State Parole Office" prompted Sponsler's counsel to make a motion for mistrial on the grounds the Commonwealth introduced fatal prejudice. *Id*. Prior to trial, the Commonwealth and Sponsler agreed not "to mention parole and any kind of reference to it." *Id*. The trial court denied Sponsler's motion, but offered to provide the jury a cautionary instruction. *Id*. Sponsler declined the offer and acknowledged on the record that the testimony regarding the State Parole Agent "was not prompted by the Commonwealth," but rather, "was a spontaneous answer from the officer." *Id*.

Later, during direct examination of Patrolman Daniel Vasil, Sponsler again requested sidebar to discuss the introduction of potentially prejudicial testimony. The Commonwealth assured the court it would not ask any questions about the State Parole Office or State Parole Agents, and, in fact, had prepared no such questions. N.T., 10/19/15, at 120. Neither the Commonwealth nor Sponsler called State Parole Agent Hauser to testify.

On January 12, 2016, the court sentenced Sponsler to three to six years' imprisonment. On February 1, 2016, Sponsler filed a timely appeal, and on February 5, 2016, the court granted Sponsler leave to proceed on appeal in *forma pauperis* pursuant to Pa.R.A.P. 522(d). The trial court did not serve a Pa.R.A.P. 1925(b) order to Sponsler until August 23, 2016. On September 12, 2016, he timely filed a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. Sponsler presents the following issues for our review:

1. Whether the trial court erred where it denied Sponsler's mistrial motion after Commonwealth's witness testified that a State Parole Officer assisted executing an arrest warrant for Sponsler, where the jury could have reasonably inferred that the accused had engaged in other unrelated criminal activity?

2. Whether the evidence presented by the Commonwealth was sufficient to sustain the verdict when no one was able to observe the alleged delivery of drugs, which left the jury to decide the case on speculation and conjecture?

Sponsler first claims Patrolman Wasser's testimony created an inference in the minds of the jurors of prior criminal activity on the part of Sponsler, which created unfair prejudice and therefore denied him a fair trial.

Where a defendant challenges testimony on the basis that it refers to prior criminal activity, the operative question is whether or not a juror "could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Commonwealth v. West*, 656 A.2d 519, 521 (Pa. Super. 1995) (citation omitted). However, there is no *per se* rule that any mention of a defendant's prior criminal activity warrants a mistrial. *See Commonwealth v. Valerio*, 712 A.2d 301, 303 (Pa. Super. 1998) ("there is no 'per se' rule requiring a new trial for every reference" to appellant's prior criminal activity). Rather, reference to prior criminal activity only warrants reversal if the record illustrates that prejudice resulted from the reference. *See Commonwealth v. Nichols*, 400 A.2d 1281, 1281 (Pa. 1979) ("passing references" to criminal activity do not warrant reversal).

Sergeant Wasser's testimony that a State Parole Agent participated in the execution of Sponsler's arrest warrant does not reference prior criminal activity on the part of Sponsler. Rather, it created potentially prejudicial ambiguity as to the role of the state parole office in this case. The Commonwealth sought to clarify the role of the state parole office by submitting testimony to the jury that various law enforcement agencies participate in countywide sweeps and drug raids. There are no other references to *parole* in the record. Additionally, the record indicates the intent of the prosecutor in asking this question was merely to "introduce the fact [Sergeant Wasser] was not by himself." N.T. Trial, 10/19/15, at 103.

Sponsler concedes the Commonwealth did not intentionally elicit testimony regarding the state parole agent, and the Commonwealth took special care to prevent further incidental references to the State Parole Office. *Id*. at 103, 120. **See Commonwealth v. Richardson**, 437 A.2d 1162 (Pa. 1981) (nature of reference to prior criminal conduct of defendant as well as whether Commonwealth intentionally elicited remark are considerations relevant to determination of whether mistrial is required when witness refers to prior criminal conduct of defendant).

Moreover, the trial court offered to provide the jury with a cautionary instruction. N.T. Trial, 10/19/2015, at 103. **Commonwealth v. Ford,** 607 A.2d 764, 766-67 (Pa. Super. 1997) ("[I]n certain situations, curative instructions may suffice to remove the taint of unintentional and innocuous reference to prior criminal activity."); **see Commonwealth v. Rhodes**, 378

A.2d 901 (Pa. Super. 1977) (where it is evident that introduction of an improper reference was not intentional and nature of comment was innocuous, immediate and effective curative instructions may remedy error). However, Sponsler's counsel declined the trial court's offer to provide an instruction. This tactical decision does not necessarily defy convention nor does it necessitate a mistrial. *See Commonwealth v. Gilliard*, 446 A.2d 951, 953 (Pa. Super. 1982) (mistrial not granted where trial judge offered to give cautionary instruction to cure witness' prejudicial remark, but appellant declined for tactical reasons). Indeed, in some instances, cautionary instructions are more prejudicial than curative. *See Commonwealth v. DeCampli*, 364 A.2d 454, 459 (Pa. Super. 1976). ("Any doubt in the minds of the jury about appellant's prior criminal conduct was eradicated by the sheer number of times that the court was forced to give cautionary instructions, which only served to underscore the meaning of the prejudicial testimony.").

After review, we conclude the references to Agent Hausler and the State Parole Office did not deprive Sponsler of a fair trial. Therefore, the remarks are not grounds for mistrial.

In his final claim, Sponsler asserts that the evidence was insufficient to support the verdict.[3] In reviewing a challenge to the sufficiency of the

_____

[3] We note that the trial court's Rule 1925(b) opinion fails to address Sponsler's challenge to the sufficiency of the evidence. The trial court states
*(Footnote Continued Next Page)*

evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Randall*, 758 A.2d 669, (Pa. Super. 2000).

It is important to note the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). Acknowledging this distinction, we proceed with our analysis.

In order to convict an accused of possession with intent to deliver under 35 P.S. § 780-113(a)(3)), "the Commonwealth must prove that he both possessed the controlled substance and had an intent to deliver that substance." *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted).

The CI testified that he contacted Campbell with the intent to purchase five packets of heroin for one hundred dollars, and that Campbell told him

*(Footnote Continued)* ───────────────

with respect to issue 2, "For the defense matter #2 the verdict was against the *weight* of the evidence, the court will rely on the record." Nevertheless, we are able to review Sponsler's claim. *See Eiser v. Brown & Williamson Tobacco Corp*., 938 A.2d 417 (Pa. 2007) (failure of trial court to address issues raised by appellant in 1925(b) statement impedes appellate review).

Sponsler would provide the heroin. The CI, Campbell and Sponsler met at Campbell's apartment, where the heroin transaction occurred. The CI did not give payment or take receipt of the heroin until after Sponsler arrived and met in private with Campbell. Although Campbell and Sponsler were out of the CI's view immediately before the CI gave payment and took receipt of the heroin, the CI testified this was normal.

This evidence, viewed in light most favorable to the Commonwealth, establishes that Sponsler had possession of at least five packets of heroin and planned and participated in the distribution of heroin. *See **Commonwealth v. West***, 937 A.2d 516 (Pa. Super. 2007) (evidence was sufficient to support conviction for delivering cocaine; confidential informant telephoned police and arranged to buy cocaine, officers searched confidential informant's person and vehicle before the drug buy to verify that he did not possess drugs or money, officers gave confidential informant currency to purchase cocaine, officers observed confidential informant meet with defendant, afterward the confidential informant gave the police cocaine he had just purchased; confidential informant would later testify, at trial, that he bought the cocaine from appellant).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/26/2017</u>